**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas C. PELLEGRINO, Defendant-Appellant.**

**No. 71–1694.**

United States Court of Appeals,
Ninth Circuit.

Aug. 24, 1972.

42

J. Brin Schulman (argued), Beverly Hills, Cal., for defendant-appellant.

Larry S. Flax, Asst. U. S. Atty. (argued), David R. Nissen, Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

Appellant was indicted in fifteen counts for knowingly depositing, and causing to be deposited, for mailing envelopes containing obscene, lewd, indecent, lascivious and filthy advertisements in violation of 18 U.S.C. § 1461.[1] Thirteen of the fifteen counts were either dismissed prior to trial upon the Government's motion or received judgments of acquittal from the trial court. Two counts went to the jury. Upon

[1]. At the time that the acts charged in the indictment were allegedly committed, § 1461 read in pertinent part:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device or substance; * * *
      *      *      *      *      *
Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

both appellant was convicted. The determinative question presented by this appeal is whether the material mailed was not, as a matter of constitutional law,[2] obscene. We conclude that it was not obscene and that judgment must be reversed.

The material in question consisted of advertisements for two books. The books themselves are not accused. It is the content of the advertisements alone with which we are concerned.

■ The first book was entitled "Sex Tools for Erotic Pleasure." The advertisement was a small, negligibly illustrated sheet. It promised much to the reader of the book and the purchaser of the "tools," but itself revealed little. The Government informed the jury in closing argument that it would not urge the obscenity of this flyer "in and of itself."[3] And we have no hesitation in holding that, in itself, it was nonobscene.

■ It is the second advertisement that presents discussable problems. The advertised book was entitled "Woman: Her Sexual Variations and Functions." It was represented to be over two hundred pages profusely illustrated in a deluxe vinyl edition, selling only by mail order at $14.95.

It was purportedly edited by a doctor of medicine and was described as "a complete photo-guide of female sex response." The advertisement was a brochure in color, folded to provide twelve pages of photographic and printed matter. It contained several explicit color photographs of female genitalia taken from the book itself.[4] These illustrations, however, are not presented as the "feast-your-eyes-on" type of pornographic entertainment that this court encountered and described in Miller v. United States, 431 F.2d 655 (9th Cir. 1970), cert. pending, No. 70–43.[5] Rather they are presented as illustrating various aspects of the book's claimed contributions to general knowledge respecting the functions and characteristics of female sexual organs.

Viewing the material in light of the decisions in Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970), rev'g 17 Mich.App. 318, 169 N.W.2d 367 (1969); Central Magazine Sales, Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49 (1967), rev'g 373 F.2d 633 (4th Cir. 1967); Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967), rev'g 373 F. 2d 635 (4th Cir. 1967); and United States v. Arno, 463 F.2d 731 (9th Cir. 1972); cf. Pinkus v. Pitchess, 429 F.2d 416 (9th Cir.), aff'd sub nom., California v. Pinkus, 400 U.S. 922, 91 S.Ct. 185, 27 L.Ed.2d 183 (1970), we are satisfied that it is not obscene under the standards of A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).[6]

---

2. See, e. g., Jacobellis v. Ohio, 378 U.S. 184, 187–190, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); United States v. Young, 465 F.2d 1096 (9th Cir. 1972); Miller v. United States, 431 F.2d 655, 658 (9th Cir. 1970); Childs v. Oregon, 431 F.2d 272, 275–276 (9th Cir. 1970), rev'd on other grounds, 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971).

3. Instead, it argued that it was relevant as bearing on the character of the second advertisement. See note 14 infra.

4. The brochure does not contain portrayals of explicit sexual activity between persons. Compare United States v. Young, 465 F.2d 1096 (9th Cir. 1972); United States v. Miller, 455 F.2d 899 (9th Cir. 1972), cert. pending, No. 71–1517; Huffman v.

United States, 470 F.2d 386 (D.C.Cir. Oct. 7, 1971).

5. See also United States v. Miller, 455 F.2d 899 (9th Cir. 1972), cert. pending, No. 71–1517.

We note also that in the 1970 Miller decision, the obscenity holding was reached after the "bolstering" of pandering evidence. See also the 1972 Miller decision. We have a different situation in the present case. See discussion in text of pandering, infra.

6. " * * * three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary com-

For several reasons the Government contends that less stringent standards should apply here.

It points out that the two counts upon which appellant was convicted involved mailings addressed to minors, and more generally that the distributions were accomplished by unsolicited mass mailings. It emphasizes that the mailed material consisted of advertisements. It contends that where problems of child protection or intrusion upon an unsoliciting public are involved, or where the material mailed consists of commercial advertising, the standards should be less severe than those applying in the case of distribution to consenting or willing adults.

We cannot agree.

■ Where material is intended for, and particularly disseminated to, a particular group (e. g., children or certain deviates) upon which the effect of the material could be different from its effect upon the general public, the material may be judged in terms of its appeal to the prurient interest in sex of the special group. *See* Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). Here, however, as the Government recognizes, the material was intended for the average person.[7]

■ In such a case, in our view, there can be but one constitutional standard for obscenity under a general obscenity statute such as § 1461: that applying to the public in general.[8] The standard should be that deemed appropriate for mailings to willing adult recipients.[9] Otherwise the adult population could be reduced to reading only what is fit for children, Butler v. Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed. 2d 412 (1957), or for public display upon billboards.

■ This is not to say that in cases of distribution or exposure to juveniles or of intrusion upon unwilling or unsoliciting adults the First Amendment protects distribution of all nonobscene materials. Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), holds to the contrary that certain nonobscene (under general constitutional standards) material deemed harmful to youth is subject to regulation. The same surely applies to undue intrusion. *See* Rowan v. United States Post Office Dep't, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) ; Rabe v. State of Washington, 405 U.S. 313, 317, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972) (Burger, C. J., concurring). The point is that in these areas special regulation

---

munity standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977. For the genesis of these prevailing standards, see Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

7. There is no evidence that appellant was attempting to appeal to an audience of minors. It also may be noted that while the two counts which went to the jury involved mailings to minor addresses, each of those minors had at an earlier time ordered and received sexually oriented materials through the mails. *See also* note 9 *infra*.

8. *See* Roth v. United States, 354 U.S. 476, 488–489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ; *cf.* Manual Enterprises, Inc. v. Day, 370 U.S. 478, 490–491, 82

S.Ct. 1432, 8 L.Ed.2d 639 (1962) (Harlan, J.).

9. The brochure in question carried on its cover a large and bold-type warning that it contained "an advertisement for adult material dealing with sex" and that minors and those not interested in such materials should return it with their names and addresses for removal from the mailing list. While we have no illusions that such a warning would be fully effective in preventing exposure to children or intrusion on unwilling adults, its use is consistent with appellant's direction of the material toward an average adult audience that would be interested in the material. As our opinion makes clear, to punish such a sender for the fact that some nonobscene mailings are received by minors or offended adults requires a regulation aimed at such distribution.

is necessary to meet these special problems.[10]

■ The same holds true for commercial advertising. We cannot agree with the Government that advertising is devoid of literary, artistic or other social value and accordingly is necessarily less deserving of First Amendment protection than the substance of that which is advertised.[11] Advertising performs an important First Amendment function in aid of communication. The cases on which the Government relies are cases upholding special regulation of advertising.[12] In the case of advertising, the danger of undue intrusion is implicit. The solution, however, lies in regulation appropriately directed to the problem.[13]

To read such kinds of regulation into a general obscenity statute such as § 1461 is, in our judgment, precluded by Rabe v. State of Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972). Such statutes do not give fair notice that criminal liability may depend upon the special need for regulatory protection of those whom the material may reach.

Finally, the Government contends that the advertising constitutes pandering under Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), and, in this context, is obscene.

We cannot agree.

*Ginzburg* draws its definition of pandering from Chief Justice Warren's opinion concurring in Roth v. United States, 354 U.S. 476, 495–496, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957): "The business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of [the customer]." 383 U.S. 463 at 467, 86 S.Ct. 942 at 945. *See also* United States v. Baranov, 418 F.2d 1051, 1053 (9th Cir. 1969). Further, *Ginzburg* refines the definition: "[C]ommercial exploitation of erotica solely for the sake of their prurient appeal." 383 U.S. at 466, 86 S.Ct. at 945. The Court explained the relevance of pandering evidence in ascertaining the fact of obscenity by stating that such evidence can serve to "resolve all ambiguity and doubt." *Id.* at 470, 86 S.Ct. 942. *See also* United States v. Baranov, *supra.* It is relevant in "determining whether social importance claimed for material in the courtroom was, in the circumstances, pretense or reality— whether it was the basis upon which it was traded in the marketplace or a spurious claim for litigation purposes." 383 U.S. at 470, 86 S.Ct. at 947. The nature of the pandering in which Ginzburg engaged is explained: "EROS was created, represented and sold solely as a claimed instrument of the sexual stimulation it would bring." *Id.* at 471, 86 S. Ct. at 947. "They proclaimed its obscenity; and we cannot conclude that the court below erred in taking their own evaluation at its face value * * *." *Id.* at 472, 86 S.Ct. at 948.

10. See generally Jacobellis v. Ohio, 378 U.S. 184, 195, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Brennan, J.); Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 938–39 (1963); Magrath, The Obscenity Cases: Grapes of Roth, 1966 Sup.Ct.Rev. 7, 75–76 & n. 295.

We note that Congress has recently enacted several regulatory and criminal provisions which are directed at the problems presented by mailings of sexually oriented advertisements. *See* 39 U.S.C. §§ 3008, 3010–11; 18 U.S.C. §§ 1735–37. In Rowan v. United States Post Office Dep't, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), the Supreme Court upheld against a constitutional challenge 39 U.S.C. § 4009, which has since been re-enacted as § 3008, *supra.*

11. *See* United States v. Young, 465 F.2d 1096 (9th Cir. 1972); *cf.* Ginzburg v. United States, 383 U.S. 463, 474, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).

12. *E. g.,* Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942); Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Rowan v. United States Post Office Dep't, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).

13. *See* note 10 *supra.*

Appellant contends that pandering in the *Ginzburg* sense is never relevant to the question of whether advertising in itself is obscene, since advertising does not "pander" itself. *Ginzburg*, it is argued, did not make pandering a distinct offense. The Court there was considering the obscenity of the advertised works themselves in the context of their promotion. Here the question, appellant asserts, is whether the advertising, standing alone, is obscene. The only "context" is the material itself which speaks for itself. There is no occasion to give consideration to other material for the light it can shed on the nature of the material in question.

■ We agree that in the case of advertising the fact that such material constitutes or includes pandering does not serve the purpose of enlightenment served in *Ginzburg*. We cannot say, however, that the question of pandering is wholly irrelevant. Pandering advertising may well forfeit an otherwise available claim of redeeming social value. Further it may cast light on the question whether the dominant theme of the advertising brochure itself is an appeal to a prurient interest in sex.

■ However, we do not regard this brochure as pandering as that term is defined or used in *Ginzburg*. The brochure does not proclaim the book to be obscene. In a chaste and self-serving disclaimer it asserts the opposite. While one is not given room for the slightest doubt that enjoying the educa-tional virtue of the work is going to be pretty exciting in an erotic sense, still, the persistent theme of the brochure, running throughout the text, is that the book is worth buying because it imparts knowledge and understanding of matters of importance to all adults.

■ This is not to say that in ascertaining the fact of pandering one must accept all self-serving assertions at face value. One need not accept as fact that which is transparently spurious in order to ascertain the true nature of the advertisement's appeal. However, viewing the brochure as a whole we cannot say that the text was intended to be ignored by the reader in favor of that which lay between the lines.[14]

■ The Government also insists that mass mailing itself constitutes pandering. We disagree on the facts of this case, although that may well have been an element in *Ginzburg*. There the redeeming social value asserted in the courtroom (but not in the advertising) as to certain material was usefulness to medical professionals. However, the mass mailing of the advertising material clearly demonstrated that that was not the market sought.[15] Here, mass mailing is wholly consistent with the advertisement's insistence that the book furthers knowledge and understanding of importance to all adults.[16]

We conclude that the advertising brochure, as a matter of constitutional law, is not obscene.

Judgment reversed.

14. The Government also suggests that the other advertisement for the "sex tools" book is relevant as indicating the true nature of this brochure in question. We think, however, that the connection is too attenuated. The two advertisements promote different books, and we cannot say that the "sex tools" flyer sheds relevant light on the character of the subject brochure concerning female sexual functions. At most, the suggestion is that the sender may be involved in the sale of certain works which might not be protected but are not before us. Any such suggestion in this case does not condemn protected promotion. *Cf.* United States v. Baranov, 418 F.2d 1051, 1053–1054 (9th Cir. 1969).

15. *See also* United States v. Rebhuhn, 109 F.2d 512 (2d Cir.) (L. Hand, J.), cert. denied, 310 U.S. 629, 60 S.Ct. 976, 84 L. Ed. 1399 (1940).

16. *Compare* Miller v. United States, 431 F.2d 655, 658–659 (9th Cir. 1970), cert. pending, No. 70–43 (discussed in text *supra*).