**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William PINKUS, doing business as "Ros-
slyn News Company" and "Kamera",
Defendant-Appellant.**

No. 76–1393.

United States Court of Appeals,
Ninth Circuit.

April 7, 1977.

Rehearing and Rehearing En Banc
Denied June 6, 1977.

Elliot J. Abelson, Beverly Hills, Cal., Bernard A. Berkman, Cleveland, Ohio, Lappen, Abelson & Harris, Beverly Hills, Cal., argued, for defendant-appellant.

William D. Keller, U. S. Atty., George H. King, Asst. U. S. Atty., Los Angeles, Cal., argued for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and ORRICK, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

On this appeal from a conviction on 11 counts of mailing obscene material [1] in violation of 18 U.S.C. § 1461 (1970),[2] we are

---

* Of the Northern District of California.

1. The indictment recited that Pinkus had mailed obscene illustrated brochures advertising sex films, books, magazines and playing cards; the magazine "Bedplay"; and an 8 mm. film, "No. 613," to addressees in Nevada, New York, Iowa, Pennsylvania, Texas and New Jersey.

2. Title 18 U.S.C. § 1461 provides in pertinent part:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made. . . .

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. .

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or section 3001(e) of Title 39 to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and

presented with nine claims of error, of which several require extended consideration. They direct our attention to the adequacy and propriety of the jury instructions and the trial court's refusal to admit in evidence for jury viewing two full length motion pictures which are said to be box office successes, if not smash hits, at least with some audiences. We conclude that the trial was fairly conducted, without reversible error, and the judgment and sentence must be affirmed.

At trial, the government's case-in-chief consisted of the introduction of the obscene materials and the reading of a stipulation that they were voluntarily and intentionally mailed by the appellant with knowledge of the content and with the intention that they be for the personal use of the recipient. It was also stipulated that none had been mailed to children.

The defense introduced expert and survey evidence to prove that the materials did not appeal to prurient interests or exceed community standards, and that they had redeeming social value.[3] In rebuttal, the government called a family counselor who testified, among other things, that the materials had prurient appeal to the average person in the community as well as to sexually deviant groups.

## I.

### JURY INSTRUCTIONS

Appellant challenges four portions of the jury instructions and contends, as a fifth claim of error, that the court erred in refusing a requested instruction.

We consider first whether there was reversible error in any instruction.

shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter. . . ."

**3.** In the conviction appealed from, the *Roth-Memoirs* standard for determining obscenity was used. *See Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). The *Memoirs* Court restated the *Roth* test in the following manner:

### A. Sensitive Persons.

The court instructed the jury:[4]

Thus the brochures, magazines and film are not to be judged on the basis of your personal opinion. Nor are they to be judged by their effect on a particularly sensitive or insensitive person or group in the community. You are to judge these materials by the standard of the hypothetical average person in the community, but in determining this average standard you must include the sensitive and the insensitive, in other words, you must include everyone in the community.

Appellant contends that, by including the sensitive and the insensitive in determining the standard of the hypothetical average person in the community, the jury would not be adhering to the precept in *Miller v. California*, 413 U.S. 15, 33, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), that the material "be judged by its impact on an average person, rather than a particularly susceptible or sensitive person—or indeed a totally insensitive one," and therefore the instruction was erroneous.

We disagree. The Supreme Court has frequently held that jury instructions are to be judged as a whole, rather than by picking isolated phrases from them. *Boyd v. United States*, 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857 (1926); *Hamling v. United States*, 418 U.S. 87, 107–108, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see also United States v. Moore*, 522 F.2d 1068, 1079 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). The judge's reference here to the sensitive and the insensitive was merely an elaboration on the concept of the total community.

"as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

383 U.S. at 418, 86 S.Ct. at 977.

**4.** Reporter's Transcript at 807.

The trial judge specifically said that the hypothetical average person standard was to be used and that the materials were *not* to be judged by their effect on a particularly sensitive person. The instructions were not inconsistent with *Miller v. California, supra.*

### B. *Children in the Community.*

■ Another challenged portion of the instructions stated: [5]

In determining community standards, you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious, men and women and children, from all walks of life.

Appellant objects to the word *children* in the court's definition of *community.* Although we note that the Second Circuit has upheld a virtually identical instruction in *United States v. Manarite,* 448 F.2d 583, 592 (2d Cir.), *cert. denied,* 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971), we find no reversible error here, not because of the outcome in *Manarite,* but because of the lack of authority against such an outcome. We do not imply that we approve this language. Rather, we feel that the specific inclusion of children is unnecessary in the definition of the community and prefer that children be excluded from the court's instruction until the Supreme Court clearly indicates that inclusion is proper.

At present, the Supreme Court has both upheld a conviction involving the inclusion of children in the community [*see Roth v. United States,* 354 U.S. 476, 490, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)] and intimated that it does not necessarily approve such a charge. *See Ginzburg v. United States,* 383 U.S. 463, 465 n.3, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Although the Court has emphasized that the jury is to ascertain the sense of the "average person, applying contemporary community standards" when deciding the obscenity question [*see Hamling v. United States,* 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974)], it has not defined the term *community* in other than a geographical sense.

The instruction in this case did not, as appellant contends, result in reducing the adult population of the Central Judicial District of California to reading what is fit only for children. *Compare Butler v. Michigan,* 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412 (1957). The *entire community* was explicitly made the appropriate standard for consideration. The error, if any, does not require reversal.

### C. *Deviant Sexual Groups.*

■ Relying on *Mishkin v. New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), appellant next challenges that portion of the instruction which reads: [6]

In applying this test, the question involved is not how the picture now impresses the individual juror, but rather, considering the intended and probable recipients, how the picture would have impressed the average person, or a member of a deviant sexual group at the time they received the picture.

He interprets *Mishkin* to hold that a deviant-appeal instruction cannot be given unless there is sufficient evidence to establish that the material was designed and disseminated to a deviant group, as well as evidence which clearly defines that group and shows that it was involved in some way with these materials. Although *Mishkin* stated that *Roth* did not foreclose a finding of obscenity when the foregoing was proved, it did not hold that such evidence was a prerequisite to such a charge.

The only requirement imposed along the lines appellant suggests was that "the recipient group be defined with more specificity than in terms of sexually immature persons." *Id.* at 509, 86 S.Ct. at 964. This requirement was met by the testimony of the government rebuttal witness. [7]

---

**5.** Reporter's Transcript at 808.

**6.** Reporter's Transcript at 806–07.

**7.** The witness testified that there was appeal in the materials to the prurient interests of homo-

Our case is similar to *Hamling. v. United States, supra,* where the district court instructed as to the prurient interest of deviant groups even though there was no evidence as to specific deviant appeal. The court of appeals found no error, stating that it was " 'manifest that the District Court considered that some of the portrayals in the Brochure might be found to have a prurient appeal' to a deviant group." *Id.* at 128, 94 S.Ct. at 2913. The Supreme Court affirmed. That reasoning is applicable here. *See also, United States v. Hill,* 500 F.2d 733 (5th Cir. 1974), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975).

### D. *Pandering.*

■ The trial judge also instructed the jury on pandering, stating:[8]

> Having covered the three elements of obscenity, there is one additional matter that you may consider, and that is the matter of pandering. You must make the decision whether the materials are obscene under the test I have given you. In making this determination you are not limited to the materials themselves. In addition, you may consider the setting in which they are presented. Examples of what you may consider in this regard are such things as: manner of distribution, circumstances of production, sale and advertising. The editorial intent is also relevant. What you are determining here is whether the materials were produced and sold as stock in trade of the business of pandering. Pandering is the business of purveying textual or graphic matter openly advertised to appeal to erotic interest of the customer.

Appellant contends that there was insufficient evidence to support a charge of pandering and that in any event the charge invited the jury to consider matters not in evidence, such as manner of distribution and circumstances of production (the stipulation stating only that the materials had been intended and mailed for personal use).

Appellant relies on *United States v. Baranov,* 418 F.2d 1051 (9th Cir. 1969), for the proposition that mere proof of mailing does not support a pandering charge. *See also Redrup v. New York,* 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

*United States v. Pellegrino,* 467 F.2d 41 (9th Cir. 1972), provides a good framework for analyzing whether there is evidence of pandering in a case where the charged materials, not stipulated to be nonobscene as in *Baranov,* are available for examination. In *Pellegrino* we noted that the question of pandering is not wholly irrelevant in the case of advertising; that mass mailings can be consistent with a nonobscene publication as well as with an obscene one; and that the text of the material is not to be ignored in determining whether there is "commercial exploitation of erotica solely for the sake of their prurient appeal. 383 U.S. at 466, 86 S.Ct. at 945." *Pellegrino,* 467 F.2d at 45–46.

In *Pellegrino,* the brochure contained chaste and self-serving disclaimers of obscene theme which were not transparently spurious. The persistent theme of the brochure was that the book it advertised was worth buying because it imparted knowledge and understanding of materials of importance to all adults. *Id.* at 46. Our review of the exhibits in this case makes it clear that we have here quite a different situation. In fact, many elements of pan-

---

sexuals, sadomasochists and those interested in group sex.

Some support for appellant's position may be found in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56 n.6, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1973), where the Court, in discussing that obscene materials speak for themselves and no expert affirmative evidence is necessary when the materials are actually placed in evidence, qualified its discussion by noting: "We reserve

judgment, however, on the extreme case, not presented here, [group sex, fellatio, and cunnilingus were present in that case] where contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest." *But see* discussion of *Hamling* in text, *infra.*

**8.** Reporter's Transcript at 810.

dering identified in *Ginzburg v. United States*, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), are present.

In identifying pandering, the Court in *Ginzburg* noted that the "leer of the sensualist" permeated the advertising, the solicitation was indiscriminate and not limited to those who might independently discern the material's therapeutic worth, the petitioner deliberately represented his materials as erotically arousing, and such representations tended to force public confrontation with potentially offensive aspects of the work. 383 U.S. at 486–70, 86 S.Ct. 942.

In this case, although the mailing location was not chosen for its impact value as in *Ginzburg*, all other elements noted above that the Court found determinative of pandering were present. We find, therefore, that there was sufficient information in the stipulation and the materials themselves to support a pandering charge.

■ As to the charge itself, we find no error in the mention of manner of distribution and methods of production as *examples* of what the jurors could consider in addition to the materials themselves. Although the stipulation did not detail appellant's method of operation in terms of how the recipients were chosen and what the precise method of production was, it did contain information such as the occupation of the recipients, from which the jury could infer that no particular professional group was singled out for distribution. The charge did not *instruct* the jury to consider matters not in evidence.

■ As a fifth allegation of error, appellant contends that it was error for the court to refuse to instruct the jury that minor children were not involved in the case. We find no error. It was clear from the stipulation that children were not involved and that none had been recipients of the mailed materials. Additionally, the jurors were told during voir dire that no children were involved. We do not find other alleged improprieties concerning the intrusion of

children into the case sufficient to make the ruling erroneous.

## II.

## EVIDENTIARY RULINGS

### A. Cross-examination.

■ Appellant contends that the court erred in allowing cross-examination of a defense witness on the possible deleterious influence of the materials on young children.

As the Court recently stated in *United States v. Hamling*, 418 U.S. at 124–25, 94 S.Ct. at 2911:

> Petitioners have very much the laboring oar in showing that such rulings constitute reversible error, since "in judicial trials, the whole tendency is to leave rulings as to the illuminating relevance of testimony largely to the discretion of the trial court that hears the evidence." *NLRB v. Donnelly Co.*, 330 U.S. 219, 236, 67 S.Ct. 756, 765, 91 L.Ed. 854 (1947).

. . .

We conclude that any error was harmless. The total testimony as to the effect of the materials on young children was only three or four pages in a transcript of more than 600 pages. The evidence of obscenity was so overwhelming that this bit of testimony provides no basis for reversible error.

### B. Comparable Materials.

■ The appellant also challenges the judge's ruling that the jury would not be allowed to view the allegedly comparable films of "Deep Throat" and "The Devil in Miss Jones."

Preliminarily we note that the trial judge did not indicate specifically his ground for refusing admission of the evidence. Initially he ruled that no proper basis had been established[9] and later he stated that the movies were not "proper" for the jury to see.[10]

Although this makes review more difficult, it is well-settled that "if the decision

---

**9.** Reporter's Transcript at 171.

**10.** Reporter's Transcript at 693.

below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). We shall consider the applicable law to determine if there is any ground upon which the evidence could properly have been refused.

■ "The defendant in an obscenity prosecution, just as a defendant in any other prosecution, is entitled to an opportunity to adduce relevant, competent evidence bearing on the issues to be tried." *Hamling v. United States*, 418 U.S. at 125, 94 S.Ct. at 2912. In this circuit, however, for the films to be admissible as comparable and probative of community standards the burden is on the defendant to demonstrate two prerequisites: (1) a reasonable resemblance between the proffered comparables and the allegedly obscene materials, and (2) a reasonable degree of community acceptance of the proffered comparables. *United States v. Jacobs*, 433 F.2d 932, 933 (9th Cir. 1970).

We have viewed the two allegedly comparable films as well as all the other exhibits in this case. We conclude that "Deep Throat" and "The Devil in Miss Jones" bore a reasonable resemblance to the film "No. 613" identified in count 9 of the indictment, but not to the other materials identified in the other 10 counts.

The three films were similar because they presented the same or similar sexual acts with an equal degree of explicitness. Thus the first prong of the *Jacobs* test was met as to them. The brochures and magazine, however, were of a different medium, and as one court has noted "slight variations in format" may produce "vastly different consequences in obscenity determinations." *United States v. Womack*, 166 U.S.App.D.C. 35, 509 F.2d 368, 378 (1974), *cert. denied*, 422 U.S. 1022, 95 S.Ct. 2644, 45 L.Ed.2d 681 (1975). Moreover, the brochures advertised materials pertaining to homosexuality and sadobondage. These subjects were not portrayed in the two proffered films. As to the brochures and the rest of the exhibits, exclusive of film "No. 613", we find that the first prong of *Jacobs* was not met and

the trial judge committed no error in exercising his discretion to deny the offer of the two films into evidence.

■ This circuit has adopted the concurrent sentence doctrine which, as enunciated by the Supreme Court in *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), is that a federal appellate court, as a matter of discretion, may decide that it is unnecessary to consider arguments advanced by an appellant with regard to his conviction under one or more counts of an indictment, if he was at the same time validly convicted of other offenses under other counts and concurrent sentences were imposed. *United States v. Moore*, 452 F.2d 576, 577 (9th Cir. 1971); *United States v. Paduano*, 549 F.2d 145 at 149 (9th Cir. 1977); *United States v. Ratcliffe*, 550 F.2d 431 at 433 (9th Cir. 1976).

Pinkus was sentenced to four years on each of the eleven counts, the sentences to run concurrently. We therefore decline to examine the question whether he demonstrated sufficient community acceptance of the comparable films to warrant our finding that the trial judge erred in excluding the evidence with respect to count 9.

### III.

### DEFENSE MOTIONS

A. *Motion for Acquittal.*

Appellant contends that the court erred in denying his motion for acquittal at the end of the government's case. The basis for the motion was that the government failed to introduce expert testimony to support a claim of deviant appeal. As discussed in Part I, *supra*, appellant's cases do not support his contention. *Mishkin* and *Hamling* allow us to conclude that the materials speak for themselves on this matter.

B. *Motions to Strike and for Mistrial.*

■ Appellant also moved to strike and for a mistrial in response to the following testimony of the government rebuttal witness: "In the case that I'm currently dealing with the father molested his own

daughter after having come from an adult book store."[11]  Both motions were denied.

Because no foundation had been laid to connect the materials viewed by the father with those at issue in this case, we agree with the appellant that this was a situation "where the minute peg of relevancy [was] entirely obscured by the dirty linen hung upon it." *Lucero v. Donovan*, 354 F.2d 16, 22 n.7 (9th Cir. 1966).  The error in denying the motion to strike, however, is not so severe, when viewing the entire case, as to require reversal.  Denying the motion for mistrial was proper.

The decision of the district court is AF-FIRMED.

11. Reporter's Transcript at 579.