[Crim. No. 24253. Second Dist., Div. Four. Apr. 8, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LEROY KEOGH, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JEFFERSON, Acting P. J.—By information defendant Keogh was charged with burglary in violation of Penal Code section 459. He was then charged in a second information with four counts of forgery in violation of Penal Code section 470. The two informations were consolidated for trial, the burglary count as count I, and the four forgery counts as counts II, III, IV and V. The consolidated information was subsequently amended to add, as count VI, the crime of receiving stolen property in violation of Penal Code section 496.

Defendant entered a "not guilty" plea to all counts. His motion to dismiss (Pen. Code, § 995) was heard and denied. His motion to suppress evidence (Pen. Code, § 1538.5) was heard and denied, reopened, granted in part and denied in part.

Pursuant to a plea bargain, defendant withdrew his "not guilty" pleas to counts II and VI. He pled guilty to those counts, but moved to set aside the guilty pleas. The motion was granted. Trial was by jury. Defendant was found not guilty of burglary as charged in count I; guilty of forgery, as charged in counts II through V and guilty of receiving stolen property as charged in count VI. Defendant's motion for a new trial was denied, as was probation. The trial court judge sentenced defendant to state prison. The sentences on counts II, III, IV and V were ordered to run consecutively to each other. The sentence on count VI was ordered to run concurrently with those imposed on counts II through V. Defendant's petition for a writ of mandate was denied. This appeal is from the judgment of conviction.

Briefly stated, the evidence adduced below shows that in late December 1972 the Downey Heating and Air Conditioning Company was broken into; a check-writing machine was taken as were blank company payroll checks consecutively numbered from 2200 to 3100. The company's owner, Koehler, testified that defendant had been employed by him four or five years before.

The People produced four checks bearing the name of the Downey company and numbers in the missing sequence. The amounts payable, which had been written by a check-writing machine, were $132.03; $127.47; $96.22; and $113.82. The checks were made payable to defendant Keogh, and the drawer of each check was purportedly the owner of Downey Heating, Russell Koehler. The checks had been

endorsed by defendant and cashed at several different stores, using, in at least three instances, a temporary driver's license bearing his name as identification. Koehler testified that he had not executed the four checks. Defendant's handwriting exemplar was admitted into evidence. Expert testimony was introduced to the effect that defendant's handwriting was the same as that of the purported drawer.

The People also introduced into evidence two similarly executed checks, also showing numbers in the missing sequence, which had been found in defendant's wallet at the time of his arrest. In addition, a bundle of the missing company checks were admitted into evidence; they had been found by arresting officers in defendant's apartment. Defendant, aged 32 at trial, was addicted to heroin and the record strongly supports the conclusion that he undertook the criminal activity described herein to support his addiction.

On this appeal defendant first contends that the trial court judge who heard the section 1538.5 motion (a different judge than the one who presided at trial) erred in refusing to suppress certain evidence obtained by the police officers who arrested defendant. It is claimed that the arresting officers failed to comply with Penal Code section 844 and section 1531 in gaining entry to defendant's apartment, and that the evidence they seized there (the bundle of blank checks and the two checks in defendant's wallet) was inadmissible pursuant to the Fourth Amendment (U.S. Constitution) guarantee against unreasonable searches and seizures.

Much evidence was heard below concerning the entry, at two preliminary hearings, hearings on the section 1538.5 motion, and at trial. A review of the section 1538.5 evidence shows that Officer Pearce, an experienced narcotics officer assigned to the Long Beach Narcotics Bureau, was in possession of an arrest warrant for defendant, who had been charged with the misdemeanor violation of Health and Safety Code section 11721 (use of narcotics). On January 11, 1973, Pearce and his partner, Hill, neither of whom was in uniform, went to Apartment J, 4426 Village Road, Long Beach, in search of defendant. They knocked on the door of Apartment J, but received no response. Pearce and Hill found the manager of the apartment house, a Mr. Risener. Officer Hill testified that he and Pearce told Risener they had a warrant for Michael Keogh. Risener stated that the tenant in Apartment J called himself Thompson, but from the description of "Thompson" the officers concluded he and Keogh were one and the same.

According to the officers, Risener volunteered to go to Apartment J. With the officers standing behind him, Risener knocked on the apartment door but received no response. He then used a key to open the door about half way. Pearce looked through the door and observed defendant lying in bed, the foot of which was about eight or ten feet from the door. Defendant raised up at the intrusion, saying "Yes?" to which Pearce, still in the hallway, responded "Mr. Keogh?" Pearce and Hill then entered the apartment. Pearce testified that as he crossed the threshhold he produced his badge and ID in his left hand and stated, "Police Officer." He also testified that "I didn't announce I was a police officer while standing outside of the apartment in the hallway." He identified himself when "I had started moving in." When asked if he was inside, Pearce stated, "At least in part, yes."

Once inside, Pearce advised defendant he was under arrest; by this time defendant was out of bed. Pearce and Hill observed a narcotics kit lying on the floor. Pearce testified that he had formed no opinion at this time as to whether defendant was under the influence of narcotics. Defendant was not advised at this time of his constitutional rights with respect to custodial interrogation.[1] He sat in a chair and asked for a cigarette. Pearce testified that he asked defendant for permission to search, and defendant replied, "I don't have much choice, do I?" Pearce testified that he had explained to defendant in some detail that he did have a choice but that defendant told him he could search. During the search the bundle of blank Downey Heating checks was discovered as well as the two completed checks in defendant's wallet.

Penal Code section 844 provides, in pertinent part, that "To make an arrest . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Penal Code section 1531 provides that: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute a warrant, if, after notice of his authority and purpose, he is refused admittance."

---

[1]These rights are set forth in *Miranda* v. *Arizona,* 384 U.S. 436 (16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974.) Certain statements made by defendant to the officers prior to the giving of the required warnings were suppressed after the section 1538.5 hearing.

These statutes, derived from the common law, have the common purpose of minimizing the possibility of violent confrontations between police officers and private citizens occasioned by sudden unannounced entries by police officers into private dwellings. (*Duke* v. *Superior Court,* 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628].) "Entry" includes passing through an open door. (*People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Lawrence,* 25 Cal.App.3d 213 [101 Cal.Rptr. 671].)

Police officers are required "(1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance." (*Duke, supra,* p. 319; *Greven* v. *Superior Court,* 71 Cal.2d 287, 289 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Rosales,* 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489].) Failure to comply with these statutes results in the inadmissibility of evidence seized after an unlawful entry. (*People* v. *Kanos,* 70 Cal.2d 381 [74 Cal.Rptr. 902, 450 P.2d 278].)

Substantial compliance is sometimes found even though officers have failed to state their purpose before entering. (*Duke, supra,* p. 319; *People* v. *Thornton,* 8 Cal.App.3d 741 [87 Cal.Rptr. 535].) However, compliance does require, at the very least, that police officers identify themselves *prior* to entry. (*Garcia* v. *Superior Court,* 29 Cal.App.3d 977, 981 [106 Cal.Rptr. 98].)

In the instant case, the fact that someone else opened the door of defendant's apartment did not excuse the officers from compliance with section 844 and section 1531. Viewing the situation disclosed by the record as favorably to the judgment as possible, it seems clear that Officers Pearce and Hill neither announced their identities nor their purpose while they were standing outside defendant's apartment. The statements made *during* entry do not fulfill the statutory requirements; acceptance of such conduct as compliance would vitiate the underlying policy of the entry statutes which compels notice *prior* to entry for the reason set forth herein.

We find nothing in the record showing the type of "exigent circumstances" which have been found to justify noncompliance with these sections of the law, *i.e.,* peril to the arresting officers, possibilities of escape or destruction of evidence. Had the officers believed that criminal activity was in progress behind defendant's door

(and we do not know that they did) they still would have been required to identify themselves prior to entry. (*People* v. *De Santiago,* 71 Cal.2d 18 [76 Cal.Rptr. 809, 453 P.2d 353].)[2]

■ We conclude that the evidence should have been suppressed. However, the error was not prejudicial to defendant with respect to counts II through V, as there was ample admissible evidence in the record supporting his conviction on those counts.

■ The error does necessitate reversal of count VI, i.e., receiving stolen property. The People argue that, since the jury did not specify what stolen property they had in mind, it can be presumed that the jury was basing its verdict on the fact that defendant received funds after cashing the forged checks. We will not assume that the jury intended to convict defendant more than once for each forged check (and, of course, Pen. Code, § 654 would prevent multiple punishment in such a case). It seems highly probable that the jury was thinking of the evidence found in defendant's apartment and on his person and, since that evidence should have been suppressed, there is no substantial evidence in the record to support the conviction on count VI.

Defendant was sentenced to state prison on five counts, four of which, counts II through V, were ordered by the trial judge to run consecutively. In California, the crime of forgery is punishable by a state prison term of one to fourteen years or by imprisonment in the county jail for not more than one year. (Pen. Code, § 473.)

Defendant argues that the sentence imposed constitutes "cruel or unusual punishment," prohibited by article I, section 6, of the California Constitution,[3] and was an abuse of the trial court judge's discretion as

---

[2]The People also contend that, since the defendant consented to the search after the entry, the illegal taint was removed from the seizure of the evidence. Where, as here, the illegal entry and the subsequent search are inextricably bound together in terms of time and space such consent does not have that effect. (*People* v. *Haven,* 59 Cal.2d 713, 719 [13 Cal.Rptr. 47, 381 P.2d 927].) We do not reach the question, therefore, of the nature of the consent given by a defendant who has just injected heroin into his system, i.e., whether he is capable of waiving his constitutional rights at that point in time.

[3]"All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed; *nor shall cruel or unusual punishments be inflicted. . . .*" (Italics added.) The Eighth Amendment of the U.S. Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel *and* unusual punishments inflicted." (Italics added.) In *Robinson* v. *California,* 370 U.S. 660, 667 [8 L.Ed.2d 758, 763, 82 S.Ct. 1417], the federal prohibition was held applicable to the states through the Fourteenth Amendment. We do not approach the case at bench in terms of a federal

well. We agree. ▮ In analyzing this problem, under the indeterminate sentencing law of California, defendant's sentence must be viewed in terms of the maximum rather than the minimum punishment (*In re Lynch,* 8 Cal.3d 410, 416-417 [105 Cal.Rptr. 217, 503 P.2d 921]; *In re Lee,* 177 Cal. 690 [171 P. 958]; *In re Foss,* 10 Cal.3d 910, 919 [112 Cal.Rptr. 649, 519 P.2d 1073]; *People* v. *Morgan,* 36 Cal.App.3d 444, 447 [111 Cal.Rptr. 548]; *People* v. *Smith,* 42 Cal.App.3d 706, 709 [117 Cal.Rptr. 88]), because nothing prevents the Adult Authority from holding a prisoner for the maximum term if it so desires; thus, defendant in the case at bench has been sentenced to 56 years in state prison, a life sentence, in effect, for forging 4 checks in the aggregate amount of less than $500.

Defendant first contends that Penal Code section 473 is unconstitutional on its face because it provides a cruel, unusual punishment, i.e., 14 years, for forgery.

Traditionally, the appellate courts have been reluctant to subject sentencing statutes to critical review, preferring not to interfere with what has been regarded as a prerogative of the legislative branch of government. The California Supreme Court departed from that tradition in *In re Lynch,* 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], and in *In re Foss,* 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], holding that sentencing statutes were subject to judicial scrutiny to determine whether the sentences imposed thereunder exceeded the limits of the California Constitution, article I, section 6. Citing *Weems* v. *United States* (1910) 217 U.S. 349 [54 L.Ed. 793, 30 S.Ct. 544], the court stated that if the punishment exacted for a crime is disproportionate, the statute decreeing such punishment may not withstand constitutional attack.

▮ *Lynch* and *Foss* established three criteria for determining the presence of disproportionality in a sentencing statute:

(1) The nature of the offense and/or the offender, with particular regard to the degree of danger both present to society. (*In re Lynch,* 8 Cal.3d at p. 425.) "Relevant to this inquiry are the facts of the crime in

---

constitutional question. Our inquiry begins with the alleged violation of the California Constitution, article I, section 6. In *People* v. *Anderson,* 6 Cal.3d 628, at pages 633-634 [100 Cal.Rptr. 152, 493 P.2d 880], the California Supreme Court stated: "Because we have determined that the California Constitution does not permit the continued application of capital punishment, we need not consider whether capital punishment may also be proscribed by the Eighth Amendment to the United States Constitution."

question, the nonviolent nature of the offense, and whether there are rational gradations of culpability that can be made on the basis of the injury to the victim or to society in general. Although not mentioned in *Lynch,* also relevant is a consideration of the penological purposes of the prescribed punishment." (*In re Foss,* 10 Cal.3d at pp. 919-920.)

(2) A comparison of the challenged penalty with the punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious (*In re Lynch,* 8 Cal.3d at p. 426.)

(3) A comparison of the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision (*In re Lynch,* 8 Cal.3d at p. 427; for recent appellate application of these criteria, see *People* v. *Morgan,* 36 Cal.App.3d 444 [111 Cal.Rptr. 548].)

■ Applying these standards to Penal Code section 473, we conclude that the *statute, itself,* does not prescribe a cruel or unusual punishment. It is true that the statute does not distinguish degrees of forgery relative to the monetary amount involved, in contrast to theft, which, by statutory definition, consists of petty theft and grand theft, i.e., grand theft is defined as a taking over $200. (Pen. Code, §§ 486, 487.) It is also true that forgery is a nonviolent crime; however, it is often committed, as it was here, against small business establishments, victimizing those who can least afford the losses incurred. With respect to the second criterion, both defendant and the Attorney General devote considerable argument in their briefs to the enumeration of various provisions of the Penal Code which prescribe punishment for offenses against property or person.

No clear picture emerges with which to resolve the issue, i.e., comparison of the penalty to that exacted for other crimes in the same jurisdiction. Some serious offenses involving violence, i.e., assault with intent to commit murder (Pen. Code, § 217), mayhem (Pen. Code, § 204) and manslaughter (Pen. Code, § 193) carry penalties similar to the one exacted for forgery. The 14-year term is also exacted, however, for other offenses similar to forgery, i.e., offenses involving property (Pen. Code, § 474 through Pen. Code, § 484f), and some other "crimes against property" are, or may be, subject to a sentence in excess of 14 years (burglary, Pen. Code, § 461; arson, Pen. Code, §§ 447a, 448a).

Review of statutes sentencing offenders for forgery in other jurisdictions reveals a range of from three to twenty years. There is thus no clear indication that California's 14-year statute exacts a penalty severely disproportionate in terms of its own statutory sentencing scheme in comparison to other jurisdictions. We therefore reject defendant's contention with respect to the constitutional validity of the sentencing statute employed in the present case.

This does not dispose of the constitutional issue presented, by the use of an otherwise valid sentencing statute to impose 4 consecutive 14-year terms on defendant. He correctly contends that the sentence, even though imposed within the confines of a constitutionally valid statute, constitutes that "cruel or unusual punishment" prohibited by the California Constitution.

In the past, California has subscribed to "the . . . widely held view . . . that if the [sentencing] law is not declared unconstitutional on its face, a defendant may not argue that he has received an unduly harsh sentence within the limits of that valid statute." (*California's Cruelty Criteria: Evaluating Sentences After In Re Lynch* (1974) 25 Hastings L.J. 636, 646; see also, 33 A.L.R.3d 335 (1970)).

*Lynch* and *Foss,* cited *supra,* all dealt with sentencing *statutes* rather than with sentences imposed in particular cases. In *People* v. *Schueren,* 10 Cal.3d 553, 561 [111 Cal.Rptr. 129, 516 P.2d 833], the California Supreme Court struck down a sentence imposed as "cruel or unusual" and noted that a statute valid on its face may be unconstitutionally applied. The court also observed that disproportionality is only one standard for determining whether a penalty is "unusual," and that if a penalty is contrary, under the circumstances, to " 'the requirements of regularity and fairness' embodied in article I, section 6" it violates the California Constitution.

There appears to be no logical reason why a defendant may not raise for appellate determination the issue of whether consecutive sentences imposed upon him produce a resulting penalty so severely disproportionate, irregular and unfair in relation to his crimes that it constitutes an infringement of his right to be free from "cruel or unusual punishment." In the present case we consider it our responsibility to conduct such review.

No similar California case has been cited to us. In *Faulkner* v. *State* (Alaska, 1968) 445 P.2d 815, the Alaska appellate court remanded a case for resentencing because the trial court judge had imposed consecutive sentences totalling 36 years on a defendant convicted of numerous counts of drawing checks with insufficient funds. The decision to remand was two to one. The justices comprising the majority did not agree on the grounds for remand, one finding the sentence imposed to be an abuse of judicial discretion while the other viewed it as exceeding constitutional limits. Both agreed that no useful penal purpose would be served by the defendant being required to spend so much time in prison; one justice commented that "the offense is not of sufficient gravity to justify imposing what amounts to a life sentence on appellant."

█ Turning to the case before us, we apply the *Lynch-Foss* criteria to the extent that is possible, and conclude that the imposition of a life sentence for the forgery of checks in an aggregate amount of less than $500 is so severely disproportionate as to violate the California Constitution, article I, section 6.

Considering first the nature of the offense and the offender, we note that defendant was, at time of trial, 32 years of age; he had a previous felony conviction and other minor convictions all of which were related directly or indirectly to the use of heroin. Defendant's criminal conduct, while serious, has been nonviolent in nature. It appears that the only violence involved is the self-abuse of his heroin addiction.

As to the second *Lynch* standard, we note that far more serious crimes are punishable by life imprisonment in California, including second degree murder (Pen. Code, § 190); kidnapping for ransom or robbery (Pen. Code, § 209), robbery (Pen. Code, § 213, subds. 1 and 2); assault with a deadly weapon (Pen. Code, § 245, subds. (a) and (b)); and rape (Pen. Code, § 264).

While we have no information on the frequency of sentencing forgers to life terms in other jurisdictions, the record before us discloses that the California judge who approved the initial plea bargain apparently thought that county jail time would serve the penal purpose adequately. The 1972 Adult Prosecution Reference Tables, published by the State of California Department of Justice, Bureau of Criminal Statistics, in Crime and Delinquency in California reveal some interesting information about the fate of forgers in California during that year. The tables, at page 33, show that 3,633 persons were convicted of forgery and similar

offenses. Of the 2,046 convicted of forgery, less than 10%, i.e., 191, were sent to state prison. Another 10 percent, i.e., 203, received misdemeanor sentences and served their time in the county jail. Of the remainder, 778 received probation with some county jail time, or probation with no jail time (679); the rest were committed to various other institutions.

Additional statistical information[4] does not reveal the incidence of consecutive sentencing of forgers or other offenders in California, but does disclose that the median time served by forgers in California during 1970 was 24 months and during 1973 was 22 months.

We conclude that it is unconstitutional for a forger to be sent to state prison in California for a possible lifetime sentence; the statistics suggest that California forgers who go to state prison for any time at all have not had sentences imposed upon them of a magnitude remotely approaching that involved here. We find disproportionality, irregularity and unfairness in the sentencing of this defendant, in violation of the California Constitution, article I, section 6.

 We base our decision to vacate the sentence and remand the case for resentencing not only on constitutional ground but also on the ground that the sentence, in our view, exceeded judicial discretion.

Penal Code section 669 gives wide discretion to trial court judges in sentencing, and allows them to choose between concurrent and consecutive sentencing in individual cases involving multiple offenses; such discretion is seldom reviewed although Penal Code section 1260 does provide: "[Reviewing courts] may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or the punishment imposed, and [the court] may set aside, affirm, or modify any or all of the proceedings, subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

Despite this provision, appellate courts in California have never evidenced enthusiasm for reviewing the sentences imposed by trial court judges exercising discretion; instead, they have relied upon those judges to weigh the offense, appraise the offender, assess the possibility of

---

[4]Statistical information tables for male felons, 1970 and 1973, contained in a bulletin dated February 26, 1974, page 2, from the Department of Corrections, State of California.

rehabilitation and protect society against the danger posed by the offender. Thus, in *People* v. *Fusaro,* 18 Cal.App.3d 877, 894 [96 Cal.Rptr. 368], it is said ". . . defendant makes a further attack on the imposition of consecutive rather than concurrent sentences. No prior conviction was charged or found. A trial court has discretion to determine whether separate sentences for separate offenses are to run concurrently or consecutively. [Citations.] As pointed out earlier in this opinion, discretion is abused only when the action exceeds the bounds of reason, all the circumstances being considered. *(People* v. *Russel, supra,* 69 Cal.2d at p. 194.) A comprehensive roundup of the 'abuse of discretion' decisions in various areas of California law would doubtless reveal fluctuating degrees of appellate laissez-faire. In none is appellate review more circumscribed than in sentencing. . . ." (And see, *People* v. *Malich,* 15 Cal.App.3d 253 [93 Cal.Rptr. 87].)

 As broadly as it may be defined, however, judicial discretion is not without limits: " 'The term . . . implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision.' " *(In re Cortez* (1971), 6 Cal.3d 78, 85-86, quoting *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826].)

We note that while consecutive sentencing is allowed by statute for multiple offenses, recognized sentencing guidelines caution against its routine use.[5]

In arguing the abuse of discretion issue, defendant relies on *People* v. *Morales,* 252 Cal.App.2d 537 [60 Cal.Rptr. 671]. There an appellate court reversed the consecutive sentences imposed by a trial court judge who saw fit to observe for the record that he was imposing the sentence to discourage defendants situated similarly to the one before him from demanding jury trials. Defendant herein suggests that the sentences in the present case were imposed because defendant had withdrawn from a plea bargain to go to trial by jury, and that the imposition was

---

[5] In its Standards Relating to Sentencing Alternatives and Procedures, Approved Draft, 1968, The American Bar Association Project on Standards for Criminal Justice, in Section 3.4(b) terms consecutive sentencing "rarely appropriate." See also, Model Sentencing Act (2d ed. 1972) Council of Judges of the National Council on Crime and Delinquency, section 17.

retribution. The record contains no support for this interpretation of events. A different judge was involved in the plea bargain. The record before us contains no announcement of the motivation of the sentencing judge in imposing a possible life sentence on defendant. In concluding that the sentence imposed here "exceeds the bounds of reason" we employ an analysis directed toward the same elements as those upon which constitutional review of such matters is based. There is no need, therefore, to reiterate the factual circumstances which lead us to our determination that the sentence constituted an abuse of discretion.

Judgment as to count VI is reversed. Judgment as to counts II, III, IV and V is affirmed, but the sentence is hereby set aside and the matter remanded for resentencing in light of the views expressed in this opinion.

Dunn, J., and Cole, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 4, 1975. Clark, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.