[Crim. No. 8676. Fourth Dist.. Div. One. Mar. 29, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD JOSEPH WIENER, Defendant and Appellant.

**COUNSEL**

Norman R. Atkins for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COLOGNE, J.**—A jury found defendant Donald Joseph Wiener guilty of seven counts of possessing obscene matter with intent to distribute it to others (Pen. Code, §§ 311.2, 311.9; Stats. 1969, ch. 249, p. 598). As to each count, Wiener admitted six prior convictions of violating Penal Code section 311.2. He appeals after the trial court sentenced him to prison, consecutively as to two counts, and stayed execution of sentence as to the remaining counts.

On July 10, 1975, Wiener possessed, with the requisite intent to distribute, magazines and a motion picture dealing with the subjects of pedophilia and bestiality, and on July 22, 1975, he similarly possessed motion pictures dealing with the subject of bestiality.[1] The matter was purchased by district attorney's investigator, Harry Grady, who worked undercover as a clerk at a bookstore called the Fifth Street Arcade, at 836 Fifth Street, San Diego. Grady worked with Richard Burton Sanders whom Wiener had hired to "front" the store as the apparent owner and licensee when in fact Wiener owned it. Wiener ordered Sanders to keep a second set of records reporting only half of the receipts which were turned over to the bookkeeper for tax evasion purposes. Sanders reported weekly to Wiener with the store's records and receipts. Grady and Sanders obtained material for the store, including the magazines and

---

[1]As renumbered, the amended indictment charged Wiener with the counts of which he was convicted in the following manner:

COUNT 7: "On or about July 10, 1975, DONALD JOSEPH WIENER did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a magazine entitled, 'Lolita—Sex,' which graphically displays nude juvenile females engaged in sexual activities, including oral copulation of the erect penis of an adult male, in violation of Penal Code section 311.2."

COUNT 8: "On or about July 10, 1975, DONALD JOSEPH WIENER did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a magazine entitled, 'Children Love—Incestuous Love,' which graphically depicts juvenile females engaged in sexual acts, including masturbation of an adult male, oral copulation of the penis of an adult male, and the insertion of foreign objects into the vagina and anus, in violation of Penal Code section 311.2."

COUNT 9: "On or about July 10, 1975, DONALD JOSEPH WIENER did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a magazine entitled, 'Children Love—Incestuous Love,' which graphically depicts juvenile females engaged in various sexual activities, in violation of Penal Code section 311.2."

COUNT 10: "On or about July 10, 1975, DONALD JOSEPH WIENER did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a magazine entitled, 'Best of Color Climax #3,' which graphically portrays bestiality, including a female masturbating a horse, masturbating a pig, and having intercourse with a pig, in violation of Penal Code section 311.2."

COUNT 11: "On or about July 10, 1975, DONALD JOSEPH WIENER did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a motion picture entitled, 'Animal Grotesque,' which graphically portrays a female having intercourse with a dog and a male engaged in sexual acts with a pig, including intercourse, masturbation, and analingus, in violation of Penal Code section 311.2."

COUNT 13: "On or about July 22, 1975, DONALD JOSEPH WIENER, MICHAEL DOWNEY, and VERNON WAYNE VOGEL did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a motion picture entitled 'Ball Busters #307,' which graphically depicts two females engaged in various sexual activities with a horse and a dog, in violation of Penal Code section 311.2."

COUNT 14: "On or about July 22, 1975, DONALD JOSEPH WIENER, MICHAEL DOWNEY, and VERNON WAYNE VOGEL did knowingly and unlawfully possess, with intent to distribute to others, obscene matter, to wit: a motion picture entitled, 'Ball Busters #0,' which graphically depicts a female engaged in various sexual activities with a dog and a pig, in violation of Penal Code section 311.2."

films, from Wiener's warehouse located at 827 National Avenue, National City. Sanders, who acted as a police informant for the term of his employment, was told by Wiener to go ahead and sell the pedophiliac magazines.

Before trial, Wiener moved for dismissal on the grounds Penal Code section 311.2 was unconstitutional under California Constitution, article I, section 2, and he was deprived of equal protection as a result of having been indicted instead of accorded rights attendant upon a preliminary hearing after prosecution by felony complaint. During trial, he moved for a mistrial when the prosecutor referred in his opening statement to evidence Wiener ordered preparation of false records to evade taxes and later when he was served by an Internal Revenue agent with legal process in the courthouse hallway. The motions were denied.

At the close of the prosecutor's case in chief, Wiener moved to dismiss under Penal Code section 1118.1, on the ground no independent evidence of prurient appeal to clearly defined deviant groups had been presented by the prosecution. The motion was denied. In his opening statement following denial of that motion, however, Wiener told the jury the case involved the "prurient interest of the average person" and "[n]o experts are required." He later agreed with the prosecutor that no instruction on prurient appeal to deviant sexual groups should be given.

Wiener's first contention on appeal is the prosecution was required to introduce expert testimony, evidence beyond the mere showing of the materials themselves, since the materials appealed, if at all, to the prurient interest of a deviant sexual group. He cites as authority *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49 [37 L.Ed.2d 446, 93 S.Ct. 2628] which reserved judgment on the question of the need for experts where the material needs "explaining to lay jurors what they otherwise could not understand" 413 U.S. at page 56, footnote 9 [37 L.Ed.2d at p. 456, 93 S.Ct. at p. 2634]; and *Pinkus* v. *United States,* 436 U.S. 293 [56 L.Ed.2d 293, 98 S.Ct. 1808], which upheld the giving of an instruction on the appeal to prurient interests of deviants with respect to materials, some of which could reasonably be viewed as having a prurient appeal "more acute to persons of deviant persuasions," saying, in part: "Whether materials are obscene generally can be decided by viewing them; expert testimony is not necessary . . . . [W]e have 'reserve[d] judgment . . . on the extreme case . . . where contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the [particu-

lar] prurient interest' [citation to *Slaton, supra*]. But here we are not presented with that 'extreme' case because the government did in fact present expert testimony on rebuttal which, when combined with the exhibits themselves, sufficiently guided the jury. This instruction, therefore, was acceptable." (*Pinkus* v. *United States, supra,* 436 U.S. 293, 302-303 [56 L.Ed.2d 293, 302, 98 S.Ct. 1808, 1814-1815].)

Penal Code section 311 provides, in part: "As used in this chapter: (a) 'Obscene matter' means matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion; and is matter which taken as a whole goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which taken as a whole is utterly without redeeming social importance.

"(1) The predominant appeal to prurient interest of the matter is judged with reference to average adults unless it appears from the nature of the matter or the circumstances of its dissemination, distribution or exhibition, that it is designed for clearly defined deviant sexual groups, in which case the predominant appeal of the matter shall be judged with reference to its intended recipient group."

We cannot say as a matter of law that materials exclusively dealing with pedophilia or bestiality distributed in a bookstore open to the general public, are "designed for clearly defined deviant sexual groups" within the meaning of the applicable law. In such circumstances, there is no such "intended recipient group" constituting "such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the [particular] prurient interest." (*Pinkus* v. *United States, supra,* 436 U.S. 293, 303 [56 L.Ed.2d 293, 302, 98 S.Ct. 1808, 1814-1815].) This being the case, the material falls into the general definition of obscene matter, with respect to which no expert testimony is required to prove it is within the statutory prohibition (*Ginzburg* v. *United States,* 383 U.S. 463, 465 [16 L.Ed.2d 31, 35, 86 S.Ct. 942, 944]).

A major defect in Wiener's argument is it assumes material showing a clearly defined deviancy such as pedophilia or bestiality is somehow automatically "designed for clearly defined deviant groups." This simply is not necessarily, if ever, true. A defined *deviancy* is a subject different and separate from a defined deviant *group.* Certainly there is nothing in

the record before us showing the pedophilia or bestiality matter involved here was apparently designed for any particular deviant group. In this connection, it is worth noting the Legislature has recognized bestiality as a separate category of sexual activity (see Pen. Code, § 286.5). Further, the Legislature could be viewed as having considered bestiality is merely one of several forms pedophilia may take insofar as "obscene matter" involving participants under 18 years old is concerned.[2] ▮ "Obscene matter," by definition is matter the predominant *appeal* of which *to the average person*, applying contemporary standards, is to prurient interest (Pen. Code, § 311, subd. (a)). Its predominant appeal to prurient interest is judged with *reference to average adults* subject to the exception Wiener asserts here for matter designed for clearly defined deviant sexual groups (Pen. Code, § 311, subd. (a)(1); *Pinkus* v. *United States, supra,* 436 U.S. 293, 303 [56 L.Ed.2d 293, 302, 98 S.Ct. 1808, 1814-1815]). ▮ That narrow exception is not shown to be applicable to the materials here in question and thus the general reference to average adults is the appropriate test.

No expert testimony was required here. No evidence beyond the mere showing of the materials themselves was necessary in this case. It follows, the motion for judgment of acquittal, made on the ground the prosecution's case failed for want of expert testimony, was also appropriately denied.[3]

▮ To the extent this contention addresses itself to the failure to instruct the jury on the matter of deviant group prurient appeal, it was waived by virtue of Wiener's opening statement that no experts were

---

[2]As amended by Statutes 1977, chapter 1061, effective September 24, 1977, Penal Code section 311.2, subdivision (b), provides: "(b) Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others for commercial consideration, or who offers to distribute, distributes, or exhibits to others for commercial consideration, any *obscene matter*, knowing that such matter *depicts a person under the age of 18 years personally engaging in or personally simulating* sexual intercourse, masturbation, sodomy, *bestiality*, or oral copulation is guilty of a felony and shall be punished by imprisonment in state prison for two, three, or four years, or by a fine not exceeding fifty thousand dollars ($50,000), in the absence of a finding that the defendant would be incapable of paying such a fine, or by both such fine and imprisonment." (Italics added.)

See also Penal Code sections 311.4, subdivision (c), and 311, subdivision (a)(3) (Stats. 1978, ch. 715) pertaining to sexual conduct of minors under 16 years old and separately listing bestiality.

[3]See also Penal Code section 312.1 providing, in part, ". . . neither the prosecution nor the defense shall be required to introduce expert witness testimony concerning the obscene or harmful character of the matter. . . ."

required in this case and his agreement with the prosecutor, communicated to the court, that the instruction should not be given (see *People* v. *Nye,* 63 Cal.2d 166, 173 [45 Cal.Rptr. 329, 403 P.2d 736]). Moreover, even assuming the failure to give the instruction was error, such conduct on Wiener's part would constitute invited error not requiring a reversal (see *People* v. *Sedeno,* 10 Cal.3d 703, 716, fn. 6 [112 Cal.Rptr. 1, 518 P.2d 913]).

■ Wiener next contends a mistrial should have been granted when Internal Revenue Service (IRS) agents served him with a subpoena within view of members of the jury, with the result he was so intimidated he felt unable to testify in his own defense. The motion for mistrial based on the prosecutor's statement Wiener ordered preparation of false records to evade taxes was denied during the prosecutor's opening statement. Later, during a recess in the trial, the IRS agent stepped up to Wiener, held up his IRS identification and served the subpoena in the hallway of the court building. Two other federal employees were nearby against the wall when the service occurred. At the time one juror in Wiener's case was about 30 feet away and most of the jurors were between 30 to 75 feet away. The agent had his back to the jurors and took precautions so they would not see the service. The agent later sat in the courtroom to gather information relevant to an IRS examination of Wiener's 1975 and 1976 federal taxes.

There is no showing any juror actually saw the service of process, although Wiener testified he felt this was an intimidating situation and he could not properly defend himself or testify as his counsel had told the jury he would do. Wiener's counsel asked the court not to ask any jurors whether they saw the incident. Nor did he seek to examine either of the other federal employees present.

Under these circumstances, particularly considering the absence of evidence the incident was seen by a juror and the fact Wiener's control of the bookstore business was an issue in the case, there was no abuse of discretion in the trial court's denial of the mistrial motions. Accordingly, the rulings will be upheld (see *People* v. *Slocum,* 52 Cal.App.3d 867, 884 [125 Cal.Rptr. 442]). Wiener was not deprived of a fair trial as a result of the tax evasion comment and later incident involving service of IRS process.

■ Wiener contends the California Constitution, article I, section 2, affording him more definitive and inclusive protection than the First

Amendment to the United States Constitution (see *Wilson* v. *Superior Court*, 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116]), makes the proscription of Penal Code section 311.2 unconstitutional.[4] It has been squarely held, however, Penal Code section 311.2 does not violate article I, section 2, of the California Constitution (*Bloom* v. *Municipal Court*, 16 Cal.3d 71, 82-83 [127 Cal.Rptr. 317, 545 P.2d 229]). We must follow this decision, though it is not based on the ground now asserted, and Wiener's contention thus fails (see *People* v. *Triggs*, 8 Cal.3d 884, 890-891 [106 Cal.Rptr. 408, 506 P.2d 232]).

■ Wiener's contention he was deprived of equal protection by the grand jury indictment process instead of being accorded the rights attendant upon a preliminary hearing, although meritorious, is not available to him since he entered his plea in this case long before December 13, 1978, the date *Hawkins* v. *Superior Court*, 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], became final. (Cal. Rules of Court, rule 24.) *Hawkins*, upholding an identical contention, is expressly made applicable only to Hawkins and those indicted defendants who had not entered a plea at the time the opinion became final (*Hawkins* v. *Superior Court*, *supra*, 22 Cal.3d at p.. 594). As to the other defendants, including Wiener, we apply the decisional law in effect before the date specified in *Hawkins*. That law upheld the grand jury indictment process in the face of the equal protection attack (*People* v. *Sirhan*, 7 Cal.3d 710, 746-747 [102 Cal.Rptr. 385, 497 P.2d 1121]). Accordingly, Wiener's attack on his indictment cannot and does not succeed.

■ Finally, Wiener asserts his consecutive sentencing which occurred June 2, 1977, before the determinate sentence law (see Pen. Code, § 1170 et seq.) went into effect, is shocking to the conscience and constitutes cruel and unusual punishment violating the United States Constitution and article I, section 17 of the California Constitution. He claims his "effective sentence" under Penal Code section 1170.2 is four years, and since he distributed pictures and did not produce the material, this term is more shocking to the sensibilities than any of the worst pictures in the worst magazines or films in the case.

---

[4]California Constitution, article I, section 2, provides: "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

United States Constitution, First Amendment, reads: "Congress shall make no law . . . abridging the freedom of speech or of the press . . . ."

To the extent this contention addresses itself to the consecutive rather than concurrent sentencing (see *People* v. *Keogh,* 46 Cal.App.3d 919, 933-935 [120 Cal.Rptr. 817]), neither Wiener nor the record shows any abuse of the trial court's discretion in making such a sentencing decision (see Pen. Code, § 669; *In re Sandel,* 64 Cal.2d 412, 416 [50 Cal.Rptr. 462, 412 P.2d 806]). To the contrary, in light of Wiener's six prior convictions of violating the same code section spanning a period of over six years, the record supports the trial court's choice.

In our view, the available punishment is not disproportionate at all, much less so disproportionate as to shock fundamental notions of human dignity (see *In re Lynch,* 8 Cal.3d 410, 424, 427 [105 Cal.Rptr. 217, 503 P.2d 921]). The availability of a four-year term for a multiple offender, both in past and present cases, is not irregular or unfair (cf. *People* v. *Schueren,* 10 Cal.3d 553, 561 [111 Cal.Rptr. 129, 516 P.2d 833]). The statute passes this constitutional challenge.

Judgment affirmed.

Brown (Gerald), P. J., and Wiener, J., concurred.

A petition for a rehearing was denied April 16, 1979, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1979.