[No. B046063. Second Dist., Div. Five. Apr. 19, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR LAMAS et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Facts and sections I and II of the Discussion.

562

COUNSEL

Cara DeVito, under appointment by the Court of Appeal, and Scott S. Furstman for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Richard L. Walker and Noreen F. Berra, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRIGNON, J.—This case involves two appeals. In the first, defendant Victor Lamas appeals from the denial of his Penal Code section 1538.5 motion, after which he was convicted of conspiracy to possess cocaine for sale upon a plea of no contest. In the second, defendant Oscar DeJesus Fernandez appeals from his conviction after jury trial of conspiracy to possess cocaine for sale and attempted possession of cocaine for sale. Defendant Lamas contends that evidence seized from his apartment was the product of an illegal search and seizure and should have been suppressed. Defendant Fernandez contends that there was insufficient evidence to support his conviction, and that the court erred in imposing the high term on sentencing. We affirm.

## PROCEDURAL BACKGROUND

Defendants were charged in a felony complaint with conspiracy to possess cocaine for sale. Defendant Fernandez was also charged with attempted possession for sale of cocaine. A preliminary hearing was held at which the defendants made motions to suppress evidence pursuant to Penal Code section 1538.5. The motions were denied and both defendants were held to answer.

In superior court, defendants made motions to dismiss the information pursuant to Penal Code section 995, challenging the denial of the Penal Code section 1538.5 motions by the magistrate at the preliminary hearing. These motions were denied. Defendant Lamas pled no contest to conspiracy to possess cocaine for sale. He was sentenced to state prison for two years. After a jury trial, defendant Fernandez was convicted of conspiracy and attempted possession for sale of cocaine. He was sentenced to the high term of two years on the attempt, and a low-term sentence of two years on the conspiracy was stayed pursuant to Penal Code section 654. Defendant Lamas appeals from the denial of his section 1538.5 motion, and defendant Fernandez appeals from the judgment of conviction.

## FACTS*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

### FACTS RELATING TO THE PENAL CODE SECTION 1538.5 MOTION

Deputy Tyrone Powe of the Los Angeles County Sheriff's Department's Narcotics Bureau received information from a confidential citizen

---

*See footnote, *ante*, page 560.

informant that drug trafficking was taking place at the Oakwood Apartments in Marina del Rey. He set up a surveillance of the Oakwood Apartments.

Approximately 9 a.m., on December 18, 1986, Armando Nieto drove a Ford Aerostar van from the upper level of the parking structure of the Oakwood Apartments and parked the Ford Aerostar van on the second level. He exited the parking structure in the direction of the apartments, and returned five minutes later carrying a large blue nylon duffel bag and a large tan-colored bag which appeared to be full. The bags contained packages of cocaine. Nieto placed the bags in the back of the Ford Aerostar van and again exited the parking structure in the direction of the apartment.

Approximately a half-hour later, Nieto returned to the parking structure carrying a black open-top briefcase which appeared to be empty and drove off in a black Pontiac Fiero. The Pontiac Fiero was driven from Marina del Rey to West Los Angeles. At the corner of Santa Monica Boulevard and Veteran Avenue, Nieto used a mobile cellular telephone. Nieto made a left turn onto Veteran, drove north past an apartment building on Veteran Avenue in West Los Angeles, made a U-turn, paused, made another U-turn, parked on the opposite side of the street from the apartment building, and walked to the entrance of the Veteran Avenue apartments carrying the same black briefcase.

He pressed the buzzer to the security door and gained entrance to the complex. Nieto approached apartment No. 205 on the second level, knocked and entered. Approximately 45 minutes later, he left apartment No. 205, carrying the black briefcase which appeared to be full. The briefcase contained $17,000 in cash. He returned to the Pontiac Fiero, used his mobile cellular telephone, made a U-turn, and entered the parking structure of the Veteran Avenue apartments. Nieto was given a black nylon duffel bag which contained $215,000 in cash, a mobile cellular telephone, some marijuana, and a beeper. Nieto left the parking structure and, using countersurveillance techniques, returned to the Oakwood Apartments at approximately 11:45 a.m., where he was arrested.

Following the arrest of Nieto, the officers determined that a search warrant should be obtained for apartment No. 205 and an additional location, and Deputy Powe began the preparation of the warrant and affidavit. Approximately noon, in order to secure the location, Sergeant Edward Huffman of the Los Angeles County Sheriff's Department's Narcotics Bureau, dressed in a sheriff's raid jacket, stationed himself outside the door of apartment No. 205. He heard two voices and then the door to the apartment opened. Gustavo Posada and Louis Mendez were standing in the

doorway. Sergeant Huffman identified himself as a police officer and detained Posada and Mendez, in order to secure the premises by not allowing them to flee, warn others, or destroy evidence.

Upon entry into the apartment, the police officers made a sweep of the residence looking for additional individuals. The officers observed a money counting machine, a shoebox of rubber bands, a three-ring notebook with highlighted figures and columns of numbers, an open briefcase with a mobile cellular phone, a yellow legal-size writing pad with numbers adding up to $351,000, and three additional mobile cellular telephones which rang all afternoon. A more thorough search was conducted which uncovered a brown satchel containing cash in the amount of $31,000, a small bindle, a small amount of marijuana, a loaded gun, and a pair of gloves with white residue on them.

Approximately 3 p.m., William Rodriguez and William Dawson arrived at the apartment and were detained. Rodriguez was carrying a blue nylon duffel bag containing $123,000 in cash. Sometime later, defendant Lamas arrived at the apartment and was detained. Lamas resides at apartment No. 205.

A search warrant for apartment No. 205 was obtained at 5:05 p.m., and the officers at the apartment were notified by radio. Shortly after 6 p.m., Deputy Powe arrived at the apartment with the search warrant. The affidavit in support of the search warrant contained an unintentional misstatement. It stated that Nieto carried the black nylon duffel bag out of apartment No. 205, when in fact he obtained it from an individual in the parking structure of the Veteran Avenue apartments.

## DISCUSSION

### I, II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III

*Penal Code Section 1538.5 Motion*

Defendant Lamas contends that all evidence obtained from and observations made within apartment No. 205 should have been suppressed. Spe-

---

*See footnote, *ante,* page 560.

cifically, he argues that the entry into and occupation of the apartment was not justified by exigent circumstances and violated the "knock-notice" provisions of Penal Code sections 844 and 1531. He argues further that there was no probable cause to issue the search warrant, and that the officers could not have relied upon it in good faith. Finally, he argues that even if the warrant was valid, the inevitable discovery rule is not applicable and the previous search cannot be justified on that ground.

*Validity of the Search Warrant*

The affidavit in support of the search warrant was prepared by Deputy Tyrone Powe, who had been assigned to the narcotics bureau for over six years. The affidavit provided that Deputy Powe had been contacted by a confidential informant who described some possible drug-trafficking activities taking place in the Oakwood Apartments.

The informant had seen Nieto on five occasions in the past two and one-half weeks, making several trips to different vehicles in the Oakwood Apartments parking structure. The informant would see Nieto carry large nylon duffel bags, which appeared to be packed, and place the bags nervously in one of several different vehicles.

Deputy Powe set up a surveillance of the Oakwood Apartments. He saw Nieto carry a heavy large black nylon duffel bag, place the bag in a Nissan, and drive to an apartment complex at Bora Bora Way. Nieto took the bag into apartment No. 310 and left the apartment 30 minutes later without the bag.

The next day, the surveillance continued and the officers made the observations which have been set forth in the section, *ante*, entitled "Facts Relating to the Penal Code section 1538.5 Motion." All the vehicles used by Nieto were registered to the same post office box.

When Nieto returned from the Veteran Avenue apartments to the Oakwood Apartments parking structure, he drove slowly by the parked Ford Aerostar van, looked at it, and then parked the Pontiac Fiero on the upper level. He exited toward the apartments. He returned to the Pontiac Fiero three minutes later and removed both the black nylon duffel bag he had obtained in the parking structure of the Veteran Avenue apartments, and the black briefcase. He then exited towards the apartments.

He was confronted by officers. He immediately went through the door from the parking structure to the apartments and dropped his bags on the

floor. He tried to enter apartment No. D-101 with a key but changed his mind and ran. He denied dropping the bags.

The affidavit contained a statement that Nieto had carried both the black briefcase and the black nylon duffel bag from apartment No. 205. This was incorrect, in that the black nylon duffel bag had been obtained in the parking structure of the Veteran Avenue apartments. The superior court determined that the misstatement in the affidavit was not intentional.

■ A warrant may not be issued unless it is supported by probable cause to believe that contraband or evidence of a crime may be found at the place to be searched. Probable cause may be established by affidavit. (Cal. Const., art. I, § 13; Pen. Code, § 1525.) In determining whether probable cause is established, the reviewing court must assess the totality of the circumstances under which the warrant issued. (*Illinois* v. *Gates* (1983) 462 U.S. 213, 230-235 [76 L.Ed.2d 527, 543-546, 103 S.Ct. 2317].) The use of warrants in preference to warrantless searches is to be encouraged. Reviewing courts should not interpret affidavits in a hypertechnical rather than a commonsense manner. (*Id.* at pp. 235-236.) Doubts as to whether an affidavit demonstrates the existence of probable cause should be resolved in favor of upholding the warrant. (*People* v. *Frank* (1985) 38 Cal.3d 711, 722 [214 Cal.Rptr. 801, 700 P.2d 415].) Probable cause does not require an actual showing of criminal activity but only a fair probability or substantial chance of such activity. (*People* v. *Beekoff* (1985) 174 Cal.App.3d 305, 310 [219 Cal.Rptr. 878].)

■ Under federal law, misstatements of fact made by an affiant which are deliberately false or made with reckless disregard for the truth must be excised from the affidavit. If the remaining content still establishes probable cause, the warrant need not be voided. If the remaining content is insufficient, the warrant must be voided. (*Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674].) Under California law, negligent misstatements must also be excised from the supporting affidavit, but only if they are unreasonable. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234].)

In the instant matter, the facts asserted in the affidavit provided a proper basis for the magistrate's determination that there was a substantial probability that contraband or evidence of a crime would be found in apartment No. 205. Nieto was clearly a participant in a sophisticated drug-trafficking network. He was observed driving or placing bags under suspicious circumstances into a number of vehicles, all of which were registered to the same post office box. Some of the bags in Nieto's possession contained substantial

quantities of cocaine and cash. When confronted by police officers, Nieto abandoned two bags containing substantial amounts of cash and fled.

Nieto took an empty black briefcase with him on his trip to the Veteran Avenue apartments. Just before arriving at the apartments, he spoke on a mobile cellular telephone. He made two U-turns before parking across the street from the apartment building. He entered apartment No. 205 with an empty briefcase and exited 45 minutes later with a briefcase full of cash. He then was immediately admitted into the secured parking lot for the complex and received another bag full of cash. A probability existed that the occupants of apartment No. 205 were part of the drug-trafficking network, and that contraband or evidence of a crime would be discovered in the apartment.

The magistrate concluded that the affiant's misstatement about the black nylon duffel bag was not intentional. We need not determine whether the statement was made recklessly or negligently. If the misstatement is excised from the warrant, there still exists probable cause for its issuance.

We conclude that the magistrate properly upheld the validity of the search warrant.

*Inevitable Discovery*

█ The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule. (*Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341] overruled on other grounds in *Elkins* v. *United States* (1960) 364 U.S. 206 [4 L.Ed.2d 1669, 80 S.Ct. 1437]; *Silverman* v. *United States* (1961) 365 U.S. 505 [5 L.Ed.2d 734, 81 S.Ct. 679, 97 A.L.R.2d 1277].) In addition, the exclusionary rule prohibits the introduction into evidence of materials and testimony which are the products or indirect results of the illegal search, the so-called "fruit of the poisonous tree" doctrine. (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].) However, if such tainted evidence is also obtained from an independent source, then its admissibility is not prohibited. This exception to the exclusionary rule has come to be known as the "independent source" doctrine. (*Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385 [64 L.Ed. 319, 40 S.Ct. 182, 24 A.L.R. 1426] overruled on other grounds in *United States* v. *Havens* (1980) 446 U.S. 620 [64 L.Ed.2d 559, 100 S.Ct. 1912].) A corollary to the independent source doctrine is the "inevitable discovery" doctrine. This doctrine presupposes that tainted evidence would be admissible if it is in fact discovered by an independent source, but provides further that such tainted evidence would be admissible if it *would* have been discovered through an indepen-

dent source even if in fact it was not so discovered. (*Nix* v. *Williams.* (1984) 467 U.S. 431 [81 L.Ed.2d 377, 104 S.Ct. 2501].)

A classic example of the independent source doctrine is found in *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380]. In *Segura*, police officers unlawfully entered the defendant's residence, conducted a brief search, seized some items, and waited at the residence until an untainted search warrant was obtained. After the warrant was obtained and executed, the police officers conducted a more thorough search and discovered additional evidence. The Supreme Court specifically noted that the admissibility of the items seized during the brief initial search was not before the court. The court concluded that the evidence discovered for the first time after the untainted search warrant was obtained had been discovered through an "independent source" and was, therefore, admissible.

In *People* v. *Angulo* (1988) 199 Cal.App.3d 370 [244 Cal.Rptr. 819], we concluded on facts very similar to the facts of *Segura* that the evidence seized pursuant to a valid untainted warrant was admissible, and that a prior illegal entry and occupation of the premises was irrelevant. We noted, as did the Supreme Court in *Segura*, that the admissibility of items seized prior to the obtaining of the warrant was not an issue before us. We also concluded that the fact that information obtained in the course of the illegal entry was mentioned to the magistrate in support of the application for a search warrant did not taint the warrant where the information obtained prior to the unlawful entry was sufficient probable cause for the issuance of the warrant.

*Segura* and *Angulo* were concerned with the independent source doctrine. Both cases dealt with evidence seized during the execution of a valid untainted search warrant. Neither case concerned the admissibility of evidence seized prior to the obtaining of the warrant. The application of the independent source and inevitable discovery doctrines to evidence seized in the course of an illegal search followed by the obtaining of a valid untainted search warrant was considered by the United States Supreme Court in *Murray* v. *United States* (1988) 487 U.S. 533 [101 L.Ed.2d 472, 108 S.Ct. 2529]. The facts of *Murray* are similar to the instant case.

Police officers received information of narcotics trafficking from an informant and conducted a surveillance of the suspects. After having obtained sufficient information to constitute probable cause to obtain a search warrant for a warehouse, the officers unlawfully entered the warehouse and discovered contraband in plain view. They secured the premises and applied for a search warrant without informing the magistrate of the prior entry. No information obtained from the unlawful entry was used in obtaining the

warrant. The warrant was issued and executed, a search was conducted and evidence was seized. The Supreme Court held that evidence which is initially discovered during an illegal search, but is subsequently acquired or reacquired pursuant to a valid untainted independent search warrant, should not be excluded. The court concluded that a warrant would not be independent if ". . . the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, [] or if the information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." (*Murray* v. *United States, supra,* 487 U.S. at p. 542 [101 L.Ed.2d at pp. 483-484].)

■ The independent source and inevitable discovery doctrines are also applicable in situations where the prior illegal entry is in violation of "knock-notice" rules. (*United States* v. *Diaz-Espindola* (9th Cir. 1991) 928 F.2d 314.)[1] Prior to entering a residence police officers are required to knock on the door, wait a reasonable time for the occupant to respond to the knock, and announce their purpose. If an occupant refuses entry or does not respond, the police may forcibly enter the premises. (18 U.S.C. § 3109; see also Pen. Code, §§ 844 and 1531.) These requirements apply not only to actual forced entries but also where a chain is broken on an open door, where a passkey is used, and where a closed but unlocked door is opened. (*Sabbath* v. *United States* (1968) 391 U.S. 585, 590 [20 L.Ed.2d 828, 834, 88 S.Ct. 1755].) Where the door is already open, the officers must still identify themselves before entering. (*United States* v. *Diaz-Espindola, supra,* 928 F.2d 314; *People* v. *Keogh* (1975) 46 Cal.App.3d 919 [120 Cal.Rptr. 817].)

In *Diaz-Espindola,* the Ninth Circuit found that officers had violated the federal "knock and announce" statute when they announced their identity as they crossed the threshold of an open door. They did not receive, and they did not wait to receive, a refusal of admittance prior to their entry. Exigent circumstances were not proved which would justify the officers' disregard of the statute. After the initial unlawful entry, the officers obtained a search warrant and seized evidence pursuant to the warrant. The Ninth Circuit applied the inevitable discovery rule of *Nix* v. *Williams* to the violation of the "knock and announce" statute and concluded that the evidence was admissible.

*Application*

In this case, the officers received information from an informant which led them to conduct a surveillance of the parking structure at the Oakwood

---

[1] We note that this case does not involve a "knock-notice" violation occurring in the execution of a valid search warrant. We do not address whether such a "knock-notice" violation may be saved by the inevitable discovery doctrine. (See *Loverde* v. *Superior Court* (1984) 162 Cal.App.3d 102 [208 Cal.Rptr. 134].)

Apartments. After making certain observations and arresting Nieto, they determined to obtain a search warrant for apartment No. 205. While Deputy Powe was preparing the application for the search warrant, Sergeant Huffman and others went to the apartment complex in order to keep the apartment under surveillance. While they were waiting outside the apartment, two individuals exited and confronted the officers in their distinctive sheriff's uniforms.

The officers entered the residence, conducted one or more searches, discovered certain evidence, and made certain observations. For purposes of this discussion, we will assume without deciding that the initial warrantless entry was unlawful, in that there were no exigent circumstances and that the officers violated the "knock-notice" statutes. Subsequently, a search warrant was obtained and the search and seizure was concluded. We will also assume, for purposes of this discussion, that all seized evidence and observations were obtained prior to the issuance of the search warrant.

We have previously concluded that the search warrant was validly issued. We further conclude that the officers decided to obtain a search warrant prior to any illegal entry, and that no information obtained during the course of any illegal entry and occupation was used in obtaining the warrant. The warrant was not tainted by any illegal entry and was, therefore, independent of any illegal entry and search. Accordingly, the evidence discovered and the observations made in apartment No. 205 were admissible, since they would inevitably have been found during the independent police search.

In *Murray*, the Supreme Court remanded the case to the district court for a factual determination as to whether the agents would have sought a warrant if they had not earlier entered the warehouse. Here, the evidence is undisputed that the officers had determined to obtain a search warrant prior to any entry into the apartment. (See *United States* v. *Salas* (9th Cir. 1989) 879 F.2d 530, 538.) "The undisputed testimony that the officers had decided to obtain a warrant prior to any arguably illegal conduct distinguishes this case from *Murray* and others which have followed its course of remanding for determination of the independent source issue. [Citations.] We therefore conclude that a remand for determination whether the officers would have sought a search warrant if [the deputy] had not entered the [apartment] would be a meaningless gesture." (*People* v. *Freeman* (1990) 219 Cal.App.3d 894, 906 [268 Cal.Rptr. 603].)

Since we have concluded that the questioned evidence is admissible under the independent source and inevitable discovery doctrines, we need not reach the other issues raised by defendant concerning the violation of the

"knock-notice" statutes, the absence of exigent circumstances to justify the warrantless entry into the apartment, and the good faith of the officers in relying on an arguably invalid search warrant.

The motion to suppress evidence was properly denied.

## DISPOSITION

The judgments of conviction are affirmed.

Turner, P. J., and Boren, J., concurred.